IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**LEWIS, J.**,
individually and on behalf of
all others similarly situated,

                      Plaintiff,

vs.

**EPIC SYSTEMS CORPORATION**,

                      Defendant.

Case No. 15-cv-082

---

**DECLARATION OF ATTORNEY BREANNE L. SNAPP IN SUPPORT OF
PLAINTIFF'S MOTION TO COMPEL**

---

I, Breanne L. Snapp, certify under penalty of perjury that the following is true and correct to the best of my knowledge and recollection:

1. I am an attorney licensed to practice in the State of Wisconsin and am counsel for Plaintiff and putative class members in the above-captioned matter.

2. On March 25, 2015, Plaintiff served Defendant with his First Set of Interrogatories and First Set of Requests for Production of Documents.

3. Plaintiff's first round of discovery requests seeks information and documents related only to the formation and enforceability of the arbitration agreement.

4. Specifically, Plaintiff served the following Requests, among others:

    a. INTERROGATORY NO. 1: Identify the name, address, and telephone number of every person who was involved in drafting the arbitration agreement disseminated April 2, 2014, as well as the electronic message that accompanied it.

    b. INTERROGATORY NO. 3: Identify the name, address, and telephone number of every person who was involved in Epic's 6-month discussion

      of "the pros and cons of arbitration vs. litigation for employment related matters," as referenced in the April 2, 2014 email accompanying the arbitration agreement.

- c. INTERROGATORY NO. 4: Identify the date on which Epic began its 6-month discussion of "the pros and cons of arbitration vs. litigation for employment related matters," as referenced in the April 2, 2014 email accompanying the arbitration agreement.

- d. INTERROGATORY NO. 8: Identify the name, address, and telephone number of every person responsible for contacting employees who voted "Contact Me" in response to the April 2, 2014 arbitration agreement and accompanying email.

- e. INTERROGATORY NO. 9: Identify the name, address, and telephone number of every person responsible for contacting employees who did not vote in response to the April 2, 2014 arbitration agreement and accompanying email.

- f. INTERROGATORY NO. 14: Identify all investigations, efforts, or actions taken in response to *Nordgren v. Epic Systems Corp.* to ensure that Epic's pay practices comply with state and federal wage and hour laws.

- g. INTERROGATORY NO. 15: Identify all persons involved in the investigations and subsequent actions referenced in Interrogatory No. 14.

- h. INTERROGATORY NO. 17: Identify every judicial or administrative proceeding, investigation, or inquiry of any kind, including internal inquiries or complaints, whether oral or written, in which Defendant (or any of its officers, directors, employees, agents or representatives) has been accused of wage and hour violations or questioned regarding potential violations of any wage and hour law or regulation. Your response should identify all employee inquiries to TLs or HR as to why they are not paid overtime, as well as any statements regarding wages, overtime, or exempt status made during exit interviews (e.g., Plaintiff Dayna Long's statement during her exit interview that TWs should be paid on an hourly basis.)

- i. REQUEST NO. 1: The arbitration agreement and accompanying email disseminated by Epic to its employees on April 2, 2014, and all drafts or redlines of said agreement and email.

j.  REQUEST NO. 3: All non-privileged communications between Epic employees related to the arbitration agreement disseminated on April 2, 2014 or the accompanying email. This Request includes communications generated in response to employees who voted "Contact Me" or who did not vote in response to the April 2, 2014 arbitration agreement and accompanying email.

k.  REQUEST NO. 4: All non-privileged documents or communications related to Epic's 6-month discussion of "the pros and cons of arbitration vs. litigation for employment related matters," as referenced in the April 2, 2014 email accompanying the arbitration agreement.

l.  REQUEST NO. 6: A list of all Epic employees who voted "Contact Me" in response to the April 2, 2014 email and arbitration agreement, including their names, most recent known addresses and telephone numbers, dates of employment at Epic, and employee numbers.

m.  REQUEST NO. 8: A list of all Epic employees who did not vote in response to the April 2, 2014 email and arbitration agreement, including their names, most recent known addresses and telephone numbers, dates of employment at Epic, and employee numbers.

n.  REQUEST NO. 11: All documents that identify or describe any efforts taken by Epic to determine whether its pay policies were in compliance with the Fair Labor Standards Act ("FLSA") and Wisconsin wage and hour laws, created at any time within the last ten (10) years, including efforts taken after the *Nordgren v. Epic Systems Corp.* complaint was filed on December 6, 2013.

o.  REQUEST NO. 12: All documents, including manuals, memoranda, meeting agendas, meeting notes, reports, emails or any other document which reflect any discussion, consideration, analysis or decision regarding the question of whether TWs at Epic are exempt or non-exempt from entitlement to overtime pay.

p.  REQUEST NO. 13: All documents relating to complaints or inquiries (internal or otherwise, oral or written), lawsuits or administrative filings brought by any Epic employee related to payment of wages, including overtime and minimum wages, as well as exempt status. This request includes all employee inquiries to TLs or HR as to why they are not paid overtime, as well as any statements regarding wages, overtime, or exempt status made during exit interviews (e.g., Plaintiff Dayna Long's statement during her exit interview that TWs should be paid on an hourly basis.)

    q. REQUEST NO. 14: All documents relating to any contact between Epic and the United States Department of Labor or Wisconsin Department of Workforce Development or any other governmental agency regarding Epic's compensation practices during the past ten (10) years.

    r. REQUEST NO. 15: All messages or other electronic documents in Epic's email or computer system created in the past two (2) years, in which the words "arbitration" or "arbitration agreement" appear. This Request does not include the arbitration agreement and accompanying email disseminated to Epic employees on April 2, 2014.

    s. REQUEST NO. 19: Any documents or written communication, including electronic communication, personnel notes, and exit interviews, created after the filing of this lawsuit, addressing the job duties, work hours, method of payment (i.e., hourly versus salary), or exempt status of TWs, including communications assessing TW pay in light of *Nordgren v. Epic Systems Corp.*

5. On April 10, 2015, the parties filed their Joint Rule 26(f) Report with the Court. (Dkt. #17.) The Report stated that Defendant would be filing a motion to dismiss Plaintiff's Complaint and compel arbitration on April 13, 2015. The Report further stated that discovery should be stayed until the motion was decided, except for discovery directed toward the enforceability of the arbitration agreement. Plaintiff requested until July 10, 2015 to file his brief in response to that motion and Defendant requested until July 31, 2015 to file its reply.

6. On April 13, 2015, Defendant filed a motion to dismiss and compel individual arbitration. (Dkt. #19.)

7. On April 17, 2015, the Court accepted the parties' stay of discovery and briefing schedule. (Dkt. #23.)

8. On April 23, 2015, Plaintiff noticed the deposition of Tina Perkins, Epic's Vice President of Implementation and the individual who sent the email introducing the

4

arbitration agreement to all Epic employees.

9. On April 24, 2015, Defendant produced Responses to Plaintiff's First Set of Discovery Requests. Defendant produced none of the requested documents and substantively answered only two interrogatories.

10. On April 29, 2015, the parties met and conferred via telephone regarding each Interrogatory and Request to Produce Documents. In an attempt to compromise, Plaintiff's Counsel agreed to limit Interrogatories Nos. 14, 15, and 17 in time (i.e. prior to April 2, 2014) and scope (i.e. only Technical Writers). Plaintiff's Counsel also agreed to limit Requests for Production of Documents Nos. 3, 6, 8, 11, 13, and 14 to only those documents related to Technical Writers.

11. On April 30, 2015, Plaintiff's Counsel sent Defendant's Counsel an email memorializing the parties' telephone conference. Plaintiff's Counsel requested that Defendant's Counsel provide Defendant's position on each item by May 4, 2015.

12. On May 5, 2015, Defendant's Counsel provided Plaintiff's Counsel with Defendant's positon on each discovery item. Defendant refused to supplement any of its answers to Plaintiff's Interrogatories. Defendant agreed to produce documents responsive to Requests Nos. 7, 9, and 10. Defendant also agreed to produce documents responsive to Requests Nos. 3, 6, 8, and 15 for opt-in plaintiffs only. Defendant refused to produce any documents responsive to the remaining Requests.

13. On May 6, 2015, Defendant's Counsel agreed to produce these documents by May 8, 2015.

14. On May 6, 2015, Plaintiff's Counsel noticed the deposition of Defendant's General Counsel, Erik Phelps, whom Defendant had previously identified as the individual primarily responsible for drafting the arbitration agreement and accompanying email.

15. On May 7, 2015, Defendant produced certain documents from its employee handbook in response to Request No. 16. Defendant's Counsel stated that Defendant would not be producing the remaining agreed upon documents by May 8, 2015.

16. On May 14, 2015, Plaintiff's Counsel requested an update from Defendant's Counsel regarding the other documents Defendant agreed to produce.

17. On May 15, 2015, Defendant's Counsel produced emails sent by several opt-in plaintiffs in response to the arbitration email dated April 2, 2014. Defendant's Counsel stated that no responsive documents exist for Request Nos. 7, 9, and 10.

18. To date, Defendant has not produced any additional documents.

19. On May 13, 2015, Defendant's Counsel stated that Defendant would not produce Perkins or Phelps for their depositions noticed for June 1, 2015 and June 2, 2015, respectively, based on Defendant's objection that the topics of those depositions are not relevant.

20. On May 15, 2015, Plaintiff noticed a 30(b)(6) deposition for corporate designees on the following topics:

> 1. The identity of all individuals who participated in Epic's decision to draft and disseminate an arbitration agreement to its Technical Writers. The time, location, and substance of any meeting(s) held to discuss the Arbitration Agreement and/or the

    advantages and disadvantages of arbitration, the parameters of the Arbitration Agreement, and whether any documents were created in preparation for, during, or as a result of said meeting(s), as well as the identity of all individuals who participated in said meeting(s).

2. The identity of all individuals who have responsibility for determining the FLSA exempt/non-exempt status for Epic's Technical Writers. Any documents which reflect Epic's analysis of the exempt/non-exempt status of the Technical Writer position at any time between November 2013 and April 2014. The date when Epic last considered the exempt/non-exempt status of the Technical Writer position and the outcome of that determination.

3. The identity of all individuals who participated in drafting the April 2, 2014 e-mail sent to Epic employees with the Arbitration Agreement. Whether drafts of the e-mail were preserved and the location of any drafts of that e-mail. The substance of the e-mail sent to Epic employees.

4. Any written or unwritten policy or procedure created or used by Epic relative to communicating with employees following dissemination of the Arbitration Agreement, including, but not limited to, individuals who voted "Contact Me" or did not vote in response to the April 2, 2014 e-mail and Arbitration Agreement. Any documents provided to Epic employees charged with responding to employee questions regarding arbitration, including any documents describing what arbitration is, what the advantages or disadvantages of arbitration are, the meaning of any term in the Arbitration Agreement, the legality of the Arbitration Agreement and/or class action waivers in the Arbitration Agreement, or any other document on the subject of arbitration.

21. Defendant informed Plaintiff on May 18, 2015 that it was "inclined" to move to quash the 30(b)(6) notice, having the same substantive objections as to the individual depositions, and that witnesses would not be produced for either the 30(b)(6) deposition or for the depositions of Perkins and Phelps. Defendant stated

that it had not determined whether a motion to quash would be filed, or if so, when it would be filed.

Executed this 21st day of May, 2015.

>/s/ *Breanne L. Snapp*
>Breanne L. Snapp