IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

LEWIS, J., individually and on behalf
of all others similarly situated,                                  OPINION and ORDER

                                                                                     15-cv-82-bbc

                      Plaintiff,

        v.

EPIC SYSTEMS CORPORATION,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is a civil action for monetary relief under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and Wisconsin overtime compensation laws.  Plaintiff Jacob Lewis contends that defendant Epic Systems Corporation misclassified him and other technical writers as exempt from overtime wages and failed to pay them wages of one and one-half times their regular rates of pay for any overtime hours that they worked.  The proposed collective includes technical writers employed by defendant as of April 2, 2014, when defendant disseminated an arbitration agreement allegedly applicable to wage claims. (Another former employee of defendant has filed a similar collective action on behalf of technical writers whose employment ended before April 2, 2014.  Long v. Epic Systems Corp., case no. 15-cv-81-bbc (W.D. Wis.).  Defendant stipulated to conditional certification in that case and later moved to decertify the collective action following additional discovery.

1

I denied that motion in an order entered on September 6, 2016. Long, 15-cv-82, dkt. #102.)

In 2015, I concluded that the arbitration agreement at issue this case was invalid and stayed proceedings in this case (but not in Long) while defendant pursued an interlocutory appeal. Dkt. #54 and 66. The Court of Appeals for the Seventh Circuit recently affirmed the invalidation of the arbitration agreement. Lewis v. Epic Systems Corp., 823 F.3d 1147 (7th Cir. 2016); dkt. #68. Ten other technical writers have submitted notices of consent to join this lawsuit. Now before the court is plaintiff's motion for conditional certification of a collective action under the FLSA and authorization to notify potential class members of their right to join this case. Dkt. #69.

After considering the arguments of the parties and conducting an independent review of the declarations and other documents in the record, I conclude that plaintiff has met his burden of showing "modest" proof that some factual nexus connects him to other potential plaintiffs as victims of an unlawful practice. Although there are individual variations in the employment experiences of the members of the putative collective, at its heart, the inquiry in this case is whether plaintiffs are exempted from overtime wages under federal law by their primary job duties and the practices and processes applied to all technical writers. Accordingly, I am granting plaintiff's motion to conditionally certify the FLSA collective action and notify potential members of the existence of this lawsuit.

Plaintiff's proposed notice, consent form and response period appear reasonable, dkt. #71, exh. #1, but defendant did not object or otherwise respond to them, presumably waiting for a ruling on the underlying motion for conditional certification. Therefore, I will

allow defendant an opportunity to file any objections it may have to the content and method of the proposed notice and consent form.

In determining whether the class should be certified conditionally, I have considered the allegations in the complaint and the affidavits, documents and deposition transcripts attached to the parties' briefs. Sharpe v. APAC Customer Services, Inc., 2010 WL 135168, *4 (W.D. Wis. Jan. 11, 2010); Sjoblom v. Charter Communications, LLC, 571 F. Supp. 2d 961, 967–68 (W.D. Wis. 2008). Before I address the parties' arguments, I will summarize the relevant allegations contained in those documents.

ALLEGATIONS OF FACT

A. The Parties

Defendant Epic Systems Corporation makes software applications for medical groups, hospitals and integrated healthcare organizations. It employs more than 100 technical writers, who are members of the Technical Communications group and supervised by "team leads."

Named plaintiff Jacob Lewis and opt-in plaintiffs Charles Blackburn, Karen Campbell, Dale Erlandson, Emily Harris, Rebecca Rodgers and Lauren Weber all worked as technical writers for defendant on or after April 2, 2014, in one or more of the following application areas: clinical inpatient (healthcare in inpatient settings), clinical ambulatory (healthcare in outpatient settings) and revenue and reporting (billing, accounting and practice management). Defendant's customers may use applications from any or all of these areas.

The applications cover a wide range of topics, may have different functions and are used by different types of health care professionals and administrators.

### B.  Job Duties

Lewis and many of the opt in plaintiffs describe their primary duty as producing or revising standardized documents that describe how defendant's software works.  These descriptions are derived from templates and instructions and information provided by defendant's software developers, implementers and trainers.  Defendant has one job description for the position of technical writer, which states that "you'll create documentation about the nuts and bolts of our world class software." Long, case no. 15-cv-81, dkt. #58, exh. #2 at 2-4.  In addition, defendant defines technical writing as "a process in which information is gathered from experts and then presented in a clear, easily understandable format that is best suited to the intended audience." Id., exh. #8.

Technical writers provide different types of written materials or "deliverables" for different audiences and specialize in particular applications.  For example, implementation writers prepare written materials targeted to analysts working for a customer who is installing software for the first time.  Support writers develop written materials for analysts who are maintaining and updating an application.  Training writers develop written materials that teach end-users, such as clinicians and administrators, how to use software applications.  Technical writer may work on a special project or spend some amount of their time on non-writing tasks.

4

The opt-in plaintiffs all followed the same process in producing written materials for defendant. After receiving writing assignments from their team leads or defendant's project management software program, EMC2, they gathered information from subject matter experts, which include defendant's software developers, implementers or trainers. Technical writers then prepared written documents by inserting the information that they gathered into templates. Defendant controlled both the content and language of the written materials to insure consistency and the individual writer's anonymity. Its style guide outlines the terms, format, conventions and other writing rules to be used by technical writers. In addition, technical writers rely on defendant's intranet (or "wiki"), which contains step-by-step instructions on what information to include in written documents. Subject matter experts reviewed all completed deliverables for accuracy and other technical writers reviewed them for compliance with defendant's writing standards.

### C.  Training and Compensation

Since creating the technical writer position over 20 years ago, defendant has classified technical writers as salaried, exempt employees and pays them similar starting salaries. Defendant did not assess the work of individual technical writers to determine whether different technical writers should be classified as exempt. Technical writers consistently worked over 40 hours a week, and defendant made clear that it expected them to do so.

Defendant used a standard set of criteria to evaluate prospective technical writers and provided new technical writers the same training. All of the opt-in plaintiffs attended "Epic

360" (an orientation week for all new hires), an "App Camp" (classes on specific Epic software applications), "Tech Boot Camp" (information on producing deliverables) and "Writing at Epic" (instruction about defendant's writing conventions).

OPINION

Under the Fair Labor Standards Act (FLSA), employees are entitled to overtime pay equal to one and one-half times their regular rate of pay for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act. 29 U.S.C. §§ 207(a), 213. Schaefer-LaRose v. Eli Lilly & Co., 679 F.3d 560, 572 (7th Cir. 2012). Under § 213(a)(1), "any employee employed in a bona fide executive, administrative, or professional capacity" is exempt. Determining whether an employee qualifies for these exemptions normally requires a "thorough, fact-intensive analysis of the employee's employment duties and responsibilities." Id. (citing Roe–Midgett v. CC Services, Inc., 512 F.3d 865, 870 (7th Cir. 2008)).

If an employer does not provide required overtime pay, the statute authorizes an employee to bring suit against his or her employer, not only on behalf of him or herself, but also on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b); Alvarez v. City of Chicago, 605 F.3d 445, 448 (7th Cir. 2010); Jonites v. Exelon Corp., 522 F.3d 721, 725-26 (7th Cir. 2008). "Although § 216(b) does not explicitly require the district court to certify a collective action under the FLSA . . . the duty is implicit in the statute and the Federal Rules of Civil Procedure." Spoerle v. Kraft Foods Global, Inc., 253 F.R.D. 434, 438

(W.D. Wis. 2008).

This court applies a two-part test to determine whether an FLSA claim may proceed as a collection action. Bitner v. Wyndham Vacation Resorts, Inc., 301 F.R.D. 354, 357 (W.D. Wis. 2014); Espenscheid v. DirectSat USA, LLC, 2010 WL 2330309, *6 (W.D. Wis. Jun. 7, 2010); Austin v. Cuna Mutual Insurance Society, 232 F.R.D. 601, 605 (W.D. Wis. 2006).  At the first stage, plaintiffs must make "a modest factual showing" that they are similarly situated to potential class members and that they and potential class members have been "victims of a common policy or plan that violated the law." Espenscheid, 2010 WL 2330309, at *6; Austin, 232 F.R.D. at 605.  This determination does not involve adjudication of the merits of the claims; rather, plaintiffs must demonstrate only that there is some factual nexus that connects them to other potential plaintiffs as victims of an unlawful practice. Sjoblom v. Charter Communications, LLC, 571 F. Supp. 2d 961, 967 (W.D. Wis. 2008).  If this showing is made, the court conditionally certifies a class and authorizes notice to potential class members and the parties conduct discovery. Austin, 232 F.R.D. at 605. The second step occurs at the close of discovery upon a motion for decertification from the defendant.  At that point the court determines whether, in fact, the plaintiffs are similarly situated to those who have opted in. Id.

The parties are at the first stage of this process.  Plaintiffs are seeking conditional certification of the following class:

> All persons employed by Epic as Technical Writers as of or after April 2, 2014 who have not been compensated at a rate of one and one-half times their regular rate of pay for hours worked over 40 in a workweek at any time from three years prior to the commencement of this lawsuit to the present and

7

ongoing.

Dkt. #70 at 4.  Contrary to defendant's assertion, plaintiff has not included the position of team lead in the collective action and apparently is not seeking damages for the period of time that he or others worked as a team lead.

Plaintiff has alleged that he and other technical writers were all subject to the same unlawful practice because defendant made a general decision to classify technical writers as exempt, expected all technical writers to work overtime and did not pay any of them overtime wages for the hours they worked in excess of 40 in a work week.  Defendant contends that plaintiff cannot meet the requirements for conditional certification because determining whether technical writers were characterized properly as exempt requires a series of individualized determinations that cannot be satisfied through representative proof.  For example, defendant asserts that technical writers are exempt from overtime pay as administrative employees whose "primary duty" (1) is "[t]he performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;" and (2) includes "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(2) and (3).  It also argues briefly that at least some of the putative class members may qualify for the "highly compensated worker exemption" or the "computer employee exemption" of the basis of their job duties and salary.  Defendant then goes to great lengths to point out that the potential members of the collective action had different primary job duties because they spent different amounts of time performing non-writing tasks, provided different types

of writing for different software applications, wrote for different audiences, managed different special projects and exercised different levels of discretion and independent judgment.

Individual circumstances are inevitably present in a collective action. In some circumstances, the individualized nature of the plaintiffs' claims may make certification inappropriate. However, I have rejected the notion that individualized differences preclude conditional certification at the first stage of the conditional certification analysis. Sharpe v. APAC Customer Services, Inc., 2010 WL 135168, at *7 (W.D. Wis. Jan. 2, 2010) ("[A]rguments regarding similar situation, individual issues and manageability of a nationwide class will become relevant at the second stage . . . at which point the court will examine in detail the evidence and arguments submitted by the parties on the question of similar situation.") (internal citations omitted); Sjoblom, 2007 WL 4560541, at *9 (W.D. Wis. Dec. 19, 2007) ("[D]efendant's detailed arguments about the predominance of individualized inquiries and the dissimilarities between plaintiff and other employees are best raised after the parties have conducted further discovery and can present a more detailed factual record for the court to review."). Further, defendant's arguments concerning the specific requirements of the overtime exemptions that it intends to raise as a defense to plaintiff's claims relate to the second stage of the certification analysis, which requires the following inquiries: (1) whether the factual and employment settings of the individual plaintiffs are in fact similar or disparate; (2) whether defendants may assert various defenses that appear to be individual to each plaintiff; and (3) whether fairness and procedural

considerations support proceeding as a collective action. Espenscheid v. DirectSat USA, LLC, 2011 WL 2009967, at *4 (W.D. Wis. May 23, 2011), aff'd, 705 F.3d 770 (7th Cir. 2013) (citing Thiessen v. General Electric Capital Corp., 267 F.3d 1095, 1103 (10th Cir. 2001)). At this stage, plaintiff's burden is simply to "demonstrate a reasonable basis for believing that [he] is similarly situated to potential class members." Austin, 232 F.R.D. at 605. Plaintiff has met this initial burden.

In support of conditional certification, plaintiff has presented seven declarations from putative class members describing similar employment settings. Defendant criticizes plaintiff for offering "only a collection of vague and mostly boilerplate declarations" that "do not offer any account of their actual job duties or how the declarants actually spent their time, both of which are required to determine exempt status." Dkt. #78 at 15. I am not persuaded by defendant's challenges to the small number of declarations or their content. As I stated in Sharpe, 2010 WL 135168, at *6, "[a]dducing evidence from a small percentage of the potential class does not preclude conditional certification of a class under the FLSA." A representative plaintiff is not required to adduce evidence of hundreds of particular wage and overtime violations to make the modest factual showing for conditional certification. Kelly v. Bluegreen Corp., 256 F.R.D. 626, 629 (W.D. Wis. 2009). Although plaintiff cannot rely on mere conclusory allegations to support conditional class certification, Campeau v. NeuroScience, Inc., 86 F. Supp. 3d 912, 917 (W.D. Wis. 2015), I can reasonably infer from the declarations and other evidence submitted by plaintiff that he is similarly situated to the prospective class members.

The declarations suggest that all of defendant's technical writers had the same basic responsibility of developing written documents related to software and that they performed that function in essentially the same way, using company-mandated processes and templates. The opt-in plaintiffs all explain that after receiving a writing assignment, they created a written deliverable to explain various aspects of a software application using standardized style guides and templates and submitted their documents for review and approval. Plaintiff has supported these statements with defendant's internal documents describing the uniform nature of a technical writer's work, implying that defendant viewed technical writing as a common function regardless of the topic. The evidence also shows that putative class members had the same job description, worked in the same job position in the same department, received the same training, were recruited and hired according to common criteria and generally performed the same function of producing defendant's standardized documents in conformance with templates and rules. In fact, much of the evidence submitted by plaintiff is the same as I found sufficient to defeat defendant's motion for decertification in Long.

As I found in Long, I am not persuaded that it matters significantly whether plaintiffs worked on different applications, wrote different types of documents for different audiences or spent some of their time on special or non-writing projects. Although defendant focuses on non-writing duties performed by some putative class members in this case, it is not clear at this early stage whether those examples are sufficient to show that technical writers did not share a common primary job duty. Defendant has not identified a different job

description, position or other requirements applicable to these technical writers who performed non-writing tasks. Defendant's arguments regarding primary job duties and other individual issues may become relevant at the second stage. At the close of discovery, defendant may move to decertify the class, at which point the court will examine in detail the evidence and arguments submitted by the parties on the question of similar situation. If the court finds that any of the opt-in plaintiffs are not similarly situated to the representative plaintiffs, it may dismiss them without prejudice. In addition, the court may decertify the entire class if it finds that none of the class members are similarly situated. Espenscheid, 2010 WL 2330309, at *8–10.

In sum, because plaintiff has made a colorable showing that he is similarly situated to the putative class members with respect to nonpayment of overtime pay, I will grant his motion for conditional certification of the class proposed in the complaint and allow him to notify potential members of the class.

ORDER

IT IS ORDERED that plaintiff Jacob Lewis's motion for conditional certification of the FLSA collective action and court-authorized notice, dkt. #69, is GRANTED. Defendant shall have until October 21, 2016 to file any objections it may have to the content and

method of the proposed notice and consent form, and plaintiff shall have until October 28, 2016 to respond.

Entered this 13th day of October, 2016.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge