IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

J. LEWIS, individually and on behalf of
all others similarly situated,

                                                       OPINION AND ORDER

               Plaintiffs,

                                                         15-cv-82-bbc

     v.

EPIC SYSTEMS CORPORATION,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff J. Lewis, a former technical writer for defendant Epic Systems Corporation, filed this proposed collective and class action against defendant, contending that defendant misclassified his position as exempt from the requirement to pay overtime wages under the Fair Labor Standards Act. In September 2015, I denied defendant's motion to dismiss the case and compel arbitration of plaintiff's claims, concluding that the class action waiver in the parties' arbitration agreement violated the National Labor Relations Act. Dkt. #54. On appeal, the Court of Appeals for the Seventh Circuit agreed that the class waiver violated the NLRA, but the United States Supreme Court reversed the decision. <u>Epic Systems Corp. v. Lewis</u>, 138 S. Ct. 1612 (2018). After the case was remanded to the court of appeals, plaintiff argued that this court should consider his arguments that the arbitration agreement is unenforceable because it is unconscionable and unsupported by consideration. The court of appeals remanded the case for that purpose.

1

After considering the parties' arguments, I conclude that plaintiff has failed to show that the arbitration agreement is unconscionable or lacks consideration. Therefore, plaintiff is bound by the arbitration agreement. I will dismiss this case so that plaintiff may proceed with his claims in arbitration.

BACKGROUND

On April 2, 2014, defendant emailed an arbitration agreement to its employees, including plaintiff. The email stated:

> For about 6 months, we have been discussing the pros and cons of arbitration vs. litigation for employment related matters. The recent class action case filed against us, claiming that some of our salaried professionals should be reclassified as hourly employees, has convinced us that litigation is inefficient and wasteful, and highlights the advantages of arbitration.
>
> Arbitration will allow you to pursue your individual claims as if you were in court. The same laws apply and the arbitrator (whom you would participate in selecting) would be directed to reach a legal conclusion, and can provide the same remedies as if you were in court. Since arbitration puts some reasonable limits on processes, by addressing the merits of your claim through arbitration, rather than through individual litigation or class action, disputes can be resolved more quickly, with less expense and without the extraordinary distraction from work that litigation often imposes.

Dkt. #22-2.

The arbitration agreement was attached to the email. The agreement itself includes mutual promises to arbitrate and states that defendant considers any employee who continues to work for defendant to be subject to the contract's terms:

> <u>Agreement to Arbitrate.</u> Epic Systems Corporation ("Epic") and I agree to use binding arbitration, instead of going to court, for any "covered claims" that

2

arise or have arisen between me and Epic . . . . I understand that if I continue to work at Epic, I will be deemed to have accepted this Agreement.

\* \* \*

**I understand and agree that arbitration is the only litigation forum for resolving covered claims, and that both Epic and I are waiving the right to a trial before a judge or jury in federal or state court in favor of arbitration.**

Dkt. #22-1 (emphasis in original).

The agreement defines "covered claims" as:

any statutory or common law legal claims, asserted or unasserted, alleging the underpayment or overpayment of wages, expenses, loans, reimbursements, bonuses, commissions, advances, or any element of compensation, based on claims of eligibility for overtime, on-the-clock, off-the-clock or other uncompensated hours worked claims, . . . or any other claimed violation of wage-and-hour practices or procedures under local, state or federal statutory or common law.

Id. at 2. Specifically excluded from the agreement are "claims alleging discrimination, harassment, or retaliation," and "any claims that cannot be required to be arbitrated as a matter of law." Id.

The agreement includes a waiver of class and collective claims and limited discovery. Specifically, parties are limited to a single interrogatory identifying potential witnesses, 25 requests for production of documents, and a maximum of two eight-hour days of witness depositions. Id. at 3. The agreement expressly provides that both sides shall have the right to legal representation in arbitration, but states that neither would be entitled to attorney fees unless provided for by law. Id. Finally, the agreement states that "Epic may change or

3

terminate this agreement after giving [employees] 90 days written or electronic notice," but that "[a]ny change or termination will not apply to a pending claim." Id.

In the end of the April 2, 2014 email directed employees to "review and acknowledge" the agreement by selecting the "I understand and agree" option included in the email. Alternatively, employees could select a "contact me" option if they had questions. Id. Plaintiff responded the day after he received the agreement by selecting the "I understand and agree" option. Plaintiff has identified one employee who did not respond to the email at all and was never contacted by defendant. He also has also identified an employee who selected "I understand and agree," but responded to the email with several questions about the scope of the arbitration agreement that defendant never answered.

Neither the email nor the agreement itself identify a specific date on which the terms of the contract would become effective.

OPINION

Under the "saving's clause" of the Federal Arbitration Act, 9 U.S.C. § 2, an arbitration agreement may be invalid if it fails to satisfy general contract law principles. Thus, courts may consider whether "generally applicable contract defenses, such as fraud, duress, or unconscionability," invalidate an arbitration agreement. Epic Systems, 138 S. Ct. at 1622. In this instance, plaintiff contends that the arbitration agreement is invalid under Wisconsin law because it is unconscionable and lacks consideration.

4

In Wisconsin, unconscionability means "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." Discount Fabric House of Racine, Inc. v. Wisconsin Telephone Co., 117 Wis. 2d 587, 601, 345 N.W.2d 417 (1984) (internal quotation marks omitted). "The underlying principle . . . is one of prevention of oppression or unfair surprise and not of disturbance of allocation of risks because of superior bargaining power." Coady v. Cross Country Bank, 2007 WI App 26, ¶ 26, 299 Wis. 2d 420, 439, 729 N.W.2d 732, 741. As the party resisting arbitration, plaintiff bears the burden of establishing that the arbitration clause is unconscionable. Green Tree Financial Corp. Alabama v. Randolph, 531 U.S. 79, 91 (2000).

To determine whether a contract is unconscionable, a court weighs procedural and substantive factors on a case-by-case basis. Wisconsin Auto Title Loans v. Jones, 2006 WI 53, ¶¶ 29, 33, 290 Wis. 2d 514, 714 N.W.2d 155; Discount Fabric, 117 Wis. 2d at 602, 345 N.W.2d 417. Procedural factors include the "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party [and] whether alterations in the printed terms were possible." Discount Fabric, 117 Wis. 2d at 602, 345 N.W.2d 417 (internal quotation marks omitted). Substantive unconscionability refers to the fairness and reasonableness of the contract terms being challenged. Id.; Jones, 2006 WI 53, ¶¶ 35, 36. "The balance tips in favor of unconscionability when there is a certain quantum of procedural plus a certain quantum of substantive unconscionability." Leasefirst v. Hartford Rexall Drugs, Inc., 168 Wis. 2d 83, 88–90, 483 N.W.2d 585 (Ct. App. 1992). "The more substantive

5

unconscionability present, the less procedural unconscionability is required, and vice versa." Jones, 2006 WI 53, ¶ 33. In this instance, plaintiff has not shown either procedural or substantive unconscionability.

Plaintiff argues that the arbitration agreement imposed by defendant is procedurally unconscionable because defendant exploited its superior bargaining power by presenting the arbitration agreement on a take-it-or-leave-it basis, without giving plaintiff any opportunity to reject it or ask questions before it became effective. However, "[o]rdinarily . . . adhesion contracts are valid," and unconscionability requires something more than showing that the drafting party had "superior bargaining power." Jones, 2006 WI 53, ¶¶ 32, 53. At the time plaintiff signed the arbitration agreement, he was a college graduate and was working as a technical writer for defendant. Unlike many standard contracts, the arbitration agreement and the accompanying email were relatively short and were written in clear, understandable language. Plaintiff does not say he was confused by the email or the terms of the agreement or that he needed more time or information about the agreement before he could make an informed choice about whether to accept the agreement and continue his employment. Defendant's email gave him the option of having defendant contact him to answer questions but he failed to choose that option. Although plaintiff says that at least one employee asked some questions about the agreement that defendant failed to answer, plaintiff cites no legal authority suggesting that another employee's confusion should be considered in evaluating whether a contract is enforceable as to an employee who understood the terms of the contract and raised no questions about it.

6

Plaintiff's argument that he had no choice but to the accept the arbitration agreement is also not persuasive. Plaintiff could have rejected the terms of the agreement and found employment elsewhere. Although he suggests in a footnote that many of defendant's employees are subject to non-compete agreements that limits their ability to find other work, plaintiff has submitted no evidence showing that he was subject to a non-compete agreement that would have significantly affected his ability to find alternative work.

Plaintiff also argues that defendant's "misleading" statements regarding its pending wage and hour case render the agreement unconscionable. In particular, plaintiff says that defendant's email incorrectly described ongoing litigation as involving claims that "salaried professionals should be reclassified as hourly employees." Plaintiff says the ongoing case was actually about whether certain employees should have been paid overtime. But plaintiff does not suggest that defendant's description of the litigation misled him in any material way that affected his decision to accept the arbitration agreement. Nor would such an argument be persuasive. Defendant's email provides defendant's rationale for drafting the arbitration agreement and notifies employees that claims such as those in the pending litigation would be subject to arbitration going forward. Nothing about defendant's description of the ongoing litigation suggests an intent to mislead employees regarding the nature of the arbitration agreement itself.

I am also unpersuaded by plaintiff's argument that defendant misled employees about their rights under the arbitration agreement. Defendant stated in its email that arbitration would allow employees to pursue claims "as if [they] were in court"; that "[t]he same laws

7

apply"; and that arbitration "can provide the same remedies as if you were in court." Plaintiff argues that these statements are misleading because litigation would permit additional discovery, opportunities for a jury trial, the ability to appeal and class and collective actions. But the email also states that "arbitration puts some reasonable limits on processes," and the particular matters identified by plaintiff are expressly addressed in the agreement itself. Moreover, plaintiff has not stated that he was confused about arbitration procedures or his rights under the arbitration agreement.

Plaintiff also says that defendant should have told plaintiff that he may have a pending claim for unpaid overtime when it sent out the arbitration agreement. Plaintiff cites no authority for the proposition that employers are responsible for notifying employees of potential claims. Additionally, the arbitration agreement did not require plaintiff to waive or release already-accrued claims. The agreement requires only that employees who continue working for defendant must resolve certain types of claims through arbitration. Accordingly, plaintiff has failed to show procedural unscionability.

Even if plaintiff had shown some level of procedural unconscionability, I am not persuaded that the arbitration agreement is substantively unconscionable. The agreement is not so unreasonable or one-sided as to be "outside any notion of normal commercial relations." Everett v. Paul Davis Restoration, Inc., 771 F.3d 380, 386 (7th Cir. 2014) (discussing unconscionability standard). The agreement applies only to a narrowly defined category of claims and expressly excludes several claims that employees might bring, such as discrimination and retaliation claims. The agreement requires both defendant and plaintiff

8

to arbitrate covered claims, meaning that the agreement imposes "mutuality of obligation." Erickson Oil Products v. State, 184 Wis. 2d 36, 516 N.W.2d 755, 759 (1994) (explaining that mutuality of obligation means only that both parties or neither party must be bound). Plaintiff contends that defendant's obligations under the agreement are illusory, because defendant has never brought any wage claims against an employee before. However, if defendant chooses to bring any claims against an employee for overpayment of wages, failure to repay loans or advances or to collect unearned bonuses or moving costs, defendant would be required to arbitrate. In short, defendant and plaintiff are equally bound to arbitrate any claims that are covered by the agreement.

Finally, for many of the same reasons discussed already, I am unpersuaded by plaintiff's argument that the arbitration agreement fails for lack of consideration. Under Wisconsin law, plaintiff's continued employment is sufficient consideration to make the agreement enforceable. Runzheimer International, Ltd. v. Friedlen, 2015 WI 45, ¶ 5, 362 Wis. 2d 100, 106, 862 N.W.2d 879, 882 ("[A]n employer's forbearance in exercising its right to terminate an at-will employee constitutes lawful consideration for signing a restrictive covenant."). Additionally, the arbitration agreement is supported by consideration in the form of a mutual exchange of promises to arbitrate covered claims. Tinder v. Pinkerton Security, 305 F.3d 728, 734 (7th Cir. 2002) (Under Wisconsin law, "[a]n employer's promise to arbitrate in exchange for an employee's promise to do the same constitutes sufficient consideration to support the arbitration agreement."). Any changes defendant makes to the arbitration agreement do not apply to a pending claim and may be

9

made only with 90 days' notice. Therefore, defendant's mutual promise to arbitrate is not illusory and provides sufficient consideration for the agreement.

In sum, plaintiff has failed to show that the arbitration agreement is invalid. Therefore, plaintiff must proceed with his claims in arbitration. Because it is clear that the parties' entire dispute will be resolved by arbitration, I will direct the clerk of court to close this case, subject to reopening for purposes of confirmation of or challenges to the arbitration decision.

ORDER

IT IS ORDERED that

1. The motion filed by Jon Erik Haines to withdraw consent to join this action, dkt. #141, is GRANTED.

2. Defendant Epic Systems Corporation's motion for leave to file a sur-reply, dkt. #140, is GRANTED.

3. Plaintiff J. Lewis' motion to proceed in the district court, dkt. #133, is DENIED. Plaintiff's claims must be resolved through arbitration.

4. The clerk of court is directed to close this case.

Entered this 24th day of January, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge